## WASHINGTON BRANCH OF AMERICAN ASS'N OF UNIVERSITY WOMEN v. AMERICAN ' ASS'N OF UNIVERSITY WOMEN et al.

## LYONS et al. v. WASHINGTON BRANCH OF AMERICAN ASS'N OF UNIVERSITY WOMEN et al.

Civil Actions Nos. 1575—48, 2060—48.

District Court of the United States for the District of Columbia.

July 16, 1948.

John A. Croghan, of Washington, D. C., for Washington Branch of American Ass'n of University Women.

Warner W. Gardner, of Washington, D. C., for Lyons et al.

John Lord O'Brien, Charles A. Horsky, and Wilbur R. Lester, all of Washington, D. C., for American Ass'n of University Women.

LAWS, Chief Justice.

Civil Action No. 1575—48 is a suit brought by the Washington Branch of a national corporation known as The American Association of University Women to enjoin a threatened order of expulsion. By agreement, there was consolidated with this suit Civil Action No. 2060—48, brought by minority members of the Washington Branch to prevent the majority from denying membership to any applicant on the ground of race, color or creed.

The controversy arose when the Washington Branch in October, 1946, refused to admit to its membership those of the negro race. In December, 1946, the Board of Directors of the National Association passed a resolution stating that persons should not be denied membership on racial, religious or political grounds. In 1947, the Washington Branch in effect renewed its position of not admitting negroes to branch membership by amending its by-laws so as to give its Board of Directors the power to pass upon persons who applied for membership. The directors and

officers of the National Association, after several conferences with the officers and directors of the Branch, passed resolutions stating that the by-laws of the Washington Branch were in conflict with those of the National and if action was not taken to bring them into harmony by May 6, 1948, the Branch would be notified that it could no longer be considered a branch of the Association. The Branch took no steps to further amend its by-laws, but brought suit to enjoin defendants from putting into effect its threat of expelling the Branch.

The Washington Branch claims there is nothing in the charter or by-laws of the National organization which prevents the branches from selecting the members they desire from those applicants who are declared to be "eligible" by the National's by-laws, and that the threatened expulsion by the Directors of the National Association is unlawful.

I have no doubt as to the right of the National organization to pass a by-law requiring admission of those of all races to membership in branches as well as in the National. The question before the Court in this case, however, is not the power of the National Association to pass such a by-law, but whether one has been adopted, and if not, whether the National directors have the legal right to expel a branch for failing to observe a policy declared by the National directors.

■■ In dealing with corporate organizations, regard must be given to the contract made between the sovereign and the corporation by the charter. Insofar as branches are concerned, regard must also be given to the contract between the National organization and branches which arises by the latter's acceptance of provisions of the charter and by-laws of the National Association. The corporate charter pursuant to which plaintiff Branch was organized provides that branch associations may be formed "according to such by-laws as the corporation may adopt." This language is significant. If a group of persons forms a branch in reliance upon by-laws adopted by the National Association pursuant to its charter and, as in this case, invests money in acquiring property and

other benefits, it obtains substantial contractual rights which are not lost except upon violation of obligations assumed or upon adoption of amended by-laws. The charter authorizing the defendant association to be formed describes persons of certain educational accomplishments as being "eligible" to membership in the corporation. The by-laws adopted by the Association, wherever mention is made of those who may be admitted to membership, either National or branch, use the term "eligible." If the term "eligible" means "required to be chosen," the branches, as well as the National Association, must admit members without regard to race. However "eligible" is defined to mean "qualified to be chosen" and is commonly accepted as giving a discretion to those making the choice. Thus under the National by-laws in existence when the Washington Branch was formed and still in existence, both the National and the Branch associations have a choice as to whom they admit as members.

I have read through the National by-laws to see whether there is any other requirement that those generally having certain educational degrees or training must be received as members in the branches. I have also sought to ascertain whether there is any requirement that a National member shall be admitted to branch membership. I find no such requirement in either regard. On the contrary, the National Association until the past year has tacitly recognized the right of branches to determine admission into their membership. For years the Washington Branch has had the requirement that a new member must be sponsored by a member of the Washington Branch. The by-laws of other branches, namely, the Tulsa Branch, the Burlingame-San Mateo Hillsborough Branch and the San Diego Branch, have set up requirements with regard to membership. In the year 1945, Mrs. McHale, General Director of the American Association of University Women, wrote a letter with regard to the membership policy, in which she stated, " * * * branches can determine the composition of their group * * *" and "The National Association's policy has been autonomy in local management of branch affairs." It thus appears not only

that the National by-laws at all times have indicated the branches might pass upon eligibility of their members without control by the National Association, but that until the present controversy arose, the National officers have so interpreted the by-laws. The National directors are expressly given power to act between meetings of the Association (Art. V, Sec. 1b of the National by-laws). They also have implied powers to carry out provisions of the charter and the by-laws of a corporation. However, they do not have power to act in conflict with existing by-laws. They may not amend by-laws. This power is reserved to the representatives present at a national convention, who must act by a three-fourths' vote. The National by-laws provide for amendments as follows:

"Article II—Amendment to the By-Laws. Those by-laws may be amended at any national convention by a three-fourths vote. All proposed amendments shall be in the hands of the general director at least six months before the date of the convention. The general director shall refer all proposals received to the Committee on Revision of By-Laws. The report of this committee shall be sent to the membership two months before the convention. These by-laws may also be amended at any national convention without previous notice by unanimous vote."

The representatives at the National convention consist not only of the Board of Directors, but the former presidents of the Association and regularly accredited delegates representing state, branch, general, corporate and affiliated members (Art VII, Sec. 2 of National By-Laws).

I am of opinion that only by the adoption of amended by-laws by a national convention, in compliance with the above-quoted provisions, and a subsequent refusal by a branch to abide by such by-laws, may a branch be lawfully expelled for refusal to admit negroes to its membership.

■ There is another question in this case as to the right of the National Board of Directors to have acted to expel the Washington Branch. The question is, does the Board have legal power to expel branches or otherwise impose penalties?

The defendant corporation was organized under a special Act of the Massachusetts Legislature (see Ch. 282 of the Acts of 1899 of the Commonwealth of Massachusetts). Section 2 of the Act of Incorporation reads as follows:

"Said corporation is hereby granted all the powers, rights and privileges and is made subject to all the duties *restrictions* and liabilities set forth in chapter one hundred and fifteen of Public Statutes, *and in all other general laws now or hereafter in force* applicable to such corporations and not inconsistent with this act." (Italics supplied.)

Among the restrictions in the general corporation laws of the Commonwealth of Massachusetts are the following:

"Every corporation, except those governed by chapter one hundred and fifty-six, may by its by-laws, except as otherwise expressly provided, determine the manner of calling and conducting its meetings; the number of members which shall constitute a quorum; the number of shares which shall entitle the members to one or more votes; the mode of voting by proxy; the mode of selling shares for the payment of assessments; and the tenure of office of the several officers; and may annex suitable penalties to such by-laws, not exceeding twenty dollars for one offence; but no by-law inconsistent with law shall be made by a corporation." G.L.(Ter.Ed.) Mass. c. 155, § 7.

This language indicates that the by-laws of private corporations may determine the source of authority for imposing penalties. But in the absence of delegation of such authority by adoption of a by-law as provided by the statute, the authority to expel a branch or impose other penalties lies in the supreme body of the corporation. In this corporation, the supreme body is the National convention.

From what has been stated, the Court is constrained to hold that the Board of Directors of the National corporation acted beyond its powers in ordering the expulsion of the Washington Branch.

It has been suggested that the Washington Branch, by its by-laws and rules, sought to make possible the exclusion of national

members from clubhouse facilities owned by the National organization, contrary to agreements of 1942 and prior years respecting the joint operation of the clubhouse. This point is suggested only in the brief of defendant corporation and is not raised by the pleadings. Under the circumstances, the Court is not in a position to pass upon the question.

Plaintiff's motion for summary judgment in case No. 1575—48 will be granted. Defendant's motions to dismiss and for summary judgment in said case will be denied. In case No. 2060—48 plaintiff's motion for summary judgment will be denied and defendant's motion for summary judgment will be granted.